## W. D. TALIAFERRO V. THE STATE.

1. When the State, on the trial of one charged with assault with intent to murder, proves by a witness the act of the accused in taking possession of a deadly weapon, the defense is entitled, on cross-examination, to the remarks made by the accused at the time the weapon was taken.
2. On trial of one charged with an assault with intent to murder, it is the duty of the court to charge the law applicable to the case as developed

by the facts; and where it is not clear that the intent to murder existed, the law defining a lower grade of assault should be given in the instructions.

APPEAL from Titus. Tried below before the Hon. James H. Rogers.

J. S. Clifton, who was mayor of Mount Pleasant, on the eighteenth of February, 1873, ordered the arrest, for violation of an ordinance, of Charles Jones, who was afterwards jointly indicted in this case with John Hensley and W. D. Taliaferro, for an assault with intent to murder him. Before the trial of Jones began for a violation of the ordinance, Taliaferro, who seems to have manifested some feeling over his arrest, advised him to leave the court room. This Jones did, but was compelled to return by the mayor, who, with a pistol in his hand, ordered him back. Taliaferro, the defendant, about this time left the office, and on his return had a pocket-knife in one hand, and to his arm (which was crippled by loss of the hand) had something fastened which Clifton supposed to be a weapon; but he does not seem, during the trial, to have indulged in threats or demonstrations of violence. After the trial of Charles Jones, Hensley, in a friendly tone, called Clifton to the door; on reaching the door, Clifton was seized by Hensley, who, with a pistol in one hand and the other holding Clifton's collar, remarked, "You have imposed on Charley Jones and treated him badly, and d—d if I don't intend to whip you," but no effort was made to shoot. A struggle ensued, in which Clifton was several times struck with the pistol. After getting loose from Hensley, Clifton took refuge in a neighboring room, into which he was followed by Taliaferro and Hensley. Taliaferro had a knife in his hand, but, upon Clifton declaring himself unarmed, did not strike with it. Here Hensley renewed the attack by beating Clifton, but did not make an effort to shoot. Charles Jones at this time said, "One at a time is enough;" to

which Clifton answered, "That's right, Charley, give me a fair show." After this, Charley Jones himself engaged in a struggle with Clifton and threw him, when some one interfered and terminated the difficulty. One witness (Parker) testified to seeing Taliaferro strike Clifton once with his crippled arm. The difficulty seems to have grown out of the trial of Jones on a complaint which had neither been signed nor sworn to.

Greathouse, a witness for the State, testified on his examination-in-chief that after the struggle between the parties had terminated he saw Taliaferro take a pistol from Clifton's drawer, and "would not have noticed it but he, Clifton, called my attention to it, and said something to make me notice it." Clifton came in afterwards and seemed to be angry; looked for his pistol, and declared he could whip any of them, etc.

The defense attempted to show on cross-examination the remark of Taliaferro when he took Clifton's pistol, which was not permitted, and the ruling was assigned for error.

The court below failed to define in the instructions an aggravated assault. Verdict of guilty, and punishment assessed at seven years imprisonment in the penitentiary.

*Crawford & Crawford* and *D. B. Culberson*, for appellant.

*Geo. Clark, Attorney-General*, for the State.

DEVINE, ASSOCIATE JUSTICE. — The appellant was jointly indicted with Charles Jones and John Hensley, charged with having conspired together, and with having made an assault on J. S. Clifton, in the town of Mount Pleasant, on the eighteenth day of February, 1873, with the intent to kill and murder Clifton.

The defendant, Taliaferro, claimed a severance, and being put upon his trial, which resulted in a verdict of

.,guilty by the jury and an imprisonment of seven years in the penitentiary assessed against him, he has appealed to this court.

There were various exceptions taken to the ruling of the court during the trial, and several grounds set forth in the motion for a new trial, which it is not considered material to notice.

The ruling on the admission of evidence and the charge of the court as set forth in the second and third assignments of error are all that are necessary to be noticed in the decision of this case.

The second assignment of error is, that "the court erred in refusing to allow State's witnesses, Clifton and Greathouse, to answer questions propounded to them on cross-examination, and said errors * * * preju- diced his cause."

The refusal of the court to require the witness Clifton to answer positively whether or not the defendant had been a candidate for mayor in opposition to witness was not material ; the witness had in his direct examination stated that Taliaferro and others were candidates at the time of his being one, and the inquiry on the cross-examination, "if he knew of his own knowledge that defendant, W. D. Taliaferro, was a candidate for mayor in 1872," was sufficiently answered by his reply "that he supposed he knew it as well as other facts," and particularly so when the immaterial character of the matter, either in the direct or cross-examination, is considered.

The refusal of the court to allow the witness Great- house to state on the cross-examination the remarks made by defendant on his removal from a drawer in the may- or's office the pistol of Clifton was an injury to the de- fendant, and deprived him of material evidence which, in view of the evidence then adduced, the accused was clearly entitled to.

The State introduced words and actions of the accused,

not only from the beginning to the close of the attack on Clifton by the three persons indicted, but in addition gave in evidence every remark made by Taliaferro long before, as well as after, the disturbance, and by its witness Greathouse, who stated: "After the difficulty (meaning that portion of the attack witnessed by him), while I was sitting by the fire, I saw Taliaferro get a pistol out of Clifton's drawer; would not have noticed it but he called my attention to it and said something to make me notice it." Here was evidence which, taken in connection with other acts of defendant, tended to strengthen the belief of the jury that it was taken with a murderous intent by the accused, while on the cross-examination by the prisoner's counsel this witness was not permitted to state the remark made by the accused at the moment of his taking the pistol, although the State proved by this witness on the direct examination that he would not have noticed it if the accused had not called his attention to it and said something to make witness notice it. Refusing to permit the witness to state the accompanying remark, under the peculiar circumstances, was error. The remark of defendant, according to the opinion of the court in Mitchum v. The State, 11 Georgia, 615, constituted a portion of the *res gestæ; i. e.,* "the circumstances, facts and declarations which grow out of the main fact are cotemporaneous with it, and serve to illustrate its character."

The charge of the court is objected to on the ground that its direct tendency was to draw the mind of the jury from one of the principal questions involved in the issue, namely, the presumed intent of the accused and those charged in the indictment with him to kill and murder Clifton, and presenting to the jury the inquiry, "would the slayer have been guilty of murder if death had ensued?"—the court immediately preceding this instruction having charged the jury fully on the law of murder in the first and murder in the second degree, and

that an attack made upon a person and ending in the death of the person assailed may be murder; and yet such an attack, where the result is not death, may, when examined as to the character of the weapons or mode of assault, be nothing more than an aggravated or simple assault and battery. Hence, in a trial on an indictment for an assault with intent to kill and murder, the intent with which the assault was made becomes of great importance to enable a jury to determine whether the accused is guilty of the felony as charged, or of a less offense. It is the duty of the court to aid the jury in this investigation by delivering to them a charge or instructions on the law necessarily growing out of or applying to the case then before the court as it is presented by the pleadings and evidence.

Article 3059, Paschal's Digest, declares, "the judge shall deliver to the jury a written charge, in which he shall set forth the law applicable to the case; * * * this charge shall be given in all cases of felony, whether asked or not."

The evidence in this case shows that the question of aggravated assault was a legitimate subject of inquiry by the jury. The charge of the court, it is true, informs the jury that if not satisfied of the defendant's guilt as charged int he indictment they can inquire is he guilty of an aggravated assault, and if so satisfied may find him guilty of an aggravated assault, and assess the punishment, etc. But the court failed to "set forth the law applicable to the case." The evidence failed to show an assault with deadly weapons in any of the modes in which such weapons are used in an attempt to take human life. On the contrary, the assault and battery by Hensley, Taliaferro and Jones, although outrageous and disgraceful to all engaged in it, and it might well have been left to the jury in a charge applicable to the case whether it was with the intent to murder or, to use the

language of the principal witness for the State, to whip him (Clifton) for imposing on Charley Jones and treating him badly, as Clifton himself apparently considered it, is evidenced by his denunciations of the parties immediately after the assault, and his complaints that they had treated him badly, and his offers to fight all three singly. Under these circumstances, it was the duty of the court to have given the jury the law constituting an aggravated assault and battery as fully as the law of murder in the first and second degree had been given, particularly the following subdivisions, 7, 8 and 9 of Article 2150 of the Criminal Code: "An assault and battery becomes aggravated * * * * when a serious bodily injury is inflicted upon the person assaulted, or when committed with deadly weapons, under circumstances not amounting to an intent to murder or maim; when committed with premeditated design, and by the use of means calculated to inflict great bodily injury." We are aware of the difficulty under which a district judge labors who is called on at the close of a trial for felony to deliver a charge to the jury, surrounded by an atmosphere of feeling and suppressed excitement, too often showing itself in the addresses to the jury on behalf of the State and the accused, and with little time for reflection or preparation; which was doubtless the case at the close of this trial in the District Court. The rights of the accused, however, no less than those of the State, require that the jury shall have the law applicable to the case given them in charge. The omission to do so when it has operated to the prejudice of the legal rights of the accused is error. For the error in excluding the evidence of the witness Greathouse, and the omissions in the charge of the court, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.