FRANK DARNELL v. THE STATE.

1. RANGE—ACCUSTOMED RANGE.—In an indictment for fraudulently driving cattle from their *accustomed range* it is not necessary to describe the range nor to allege how far the animal had been driven.

2. CHARGE OF COURT.—A charge of the court which calls particular attention to the facts relied on by the parties and indicates the law upon such facts, is proper.

3. CLAIM OF OWNERSHIP IN CHARGE OF THEFT.—It is error to exclude from the jury evidence that the defendant claimed the property as his own when charged with the theft.

APPEAL from Lamar. Tried below before the Hon. J. C. Easton.

Frank Darnell was indicted, and the charge preferred was " that on the 26th day of September, 1870, in the county of Lamar, State of Texas, with force and arms, one Frank Darnell, late of said county, one certain red cow, with some white in her face and flanks and about seven years old, and one roan yearling heifer, the property of Van W. White, then and there being, did willfully take into his possession, and drive and remove from their accustomed range, with intent to defraud the owner thereof, the said cow and yearling, not being the property of said Frank Darnell, and without the consent of the owner."

Exceptions to the indictment were overruled and defendant put upon trial.

Hale, a witness for the State, testified that he was in-

formed that defendant had possession of his large red cow, and took an officer and went out about three miles southwest of Paris, where defendant had a herd of about seventy-five cattle on the open prairie, about a quarter of a mile from the public road leading from Paris to Bonham; that witness was informed that defendant was employed to gather a herd for Mr. Pinckney Price; that witness went up and took his cow, and had defendant arrested. On cross-examination counsel asked the witness "if defendant did or did not openly claim the cow at the time witness went after her." This question was excluded by the court as irrelevant.

He also testified that he had known the defendant since 1870; that a short time before the indictment was found he was informed by Charles Luck that defendant had the said cow, and was driving her off to the herd he was gathering for Price. Witness, with the officer, the next morning went to the herd, found the cow in defendant's possession, took the cow, drove her a short distance and left her, and she came on home; had defendant arrested. Witness described the cow; said he had bought her with some other cattle in 1866 from John Tyler; she was in the Tyler brand, J. T. Witness has owned her ever since.

Luck testified to seeing defendant drive the cow from a bunch of Hale's cattle, late in the evening, a short time before the indictment was found. Witness the next morning told Hale. Witness described the cow carefully.

Pinckney Price, for State, testified that in the summer of 1870 witness was collecting a drove of cattle to drive to market; the herd was kept about three miles west of Paris, on the prairie. Defendant was collecting his cattle at the same time and had sold witness a good many beeves. Defendant was not exactly collecting beeves for witness, but was collecting at the same time, and they were herding together—herding whatever cattle of his own he found with witness' herd. Witness paid defendant nothing for

his services, but he was going along to take care of his own cattle. Defendant had told witness that he had a large red cow north of town, on the prairie, that was fat and in fine condition, branded J. T. Witness was not at the herd when the cow was brought to it. Defendant had owned a good many cattle which he had from his father's estate. The cattle were to be driven to New Orleans or Galveston for sale.

George Essert, for defendant, testified that in 1868 and 1869 witness had defendant employed to collect a lot of cattle witness had bought at a bankrupt sale of William H. Tinnin; the cattle were much scattered; he was to have one-third for gathering them; they were in various marks and brands. Witness furnished defendant a list of the marks and brands; among the brands was the mark and brand of James Tinnin, J. T. Witness gave the defendant the description furnished by the assignee on his sale of the cattle. Defendant collected fifty of the stock; of these five or six escaped, and defendant was authorized to gather them wherever he could find them and account to witness for them.

Mose Dohlman, for defendant, testified to helping defendant collect the cattle for Essert; that many of the cattle were in the J. T. brand; that five or six escaped from the herd about a mile from Paris. Witness could not identify the brand of those that escaped.

John Dohlman, for defendant, testified that his son, Mose, and defendant, had gathered a stock of cattle for Essert, most of which were in the J. T. brand. Five or six of these cattle escaped from the herd near Paris—one branded J. T., and would by some be called of red color, but was a kind of dirty motly color, a sort of brindle.

J. R. Johnson, for defendant, testified that he knew of defendant being engaged gathering for Essert the old James Tinnin stock. The brand J. T. is one of the oldest in the county and was well known.

William Tinnin, for the State, testified that the mark of the James Tinnin stock was different from that testified to by witness Hale; that the J. T. brand was one of the oldest in the county, and belonged to witness at his bankruptcy.

The charge of the court is sufficiently shown in the opinion.

The jury found a verdict of guilty, and fixed the punishment at two years in the penitentiary.

Motion for new trial was overruled, and defendant appealed.

*Maxey & Lightfoot,* for appellant.

*George Clark, Attorney General,* for the State.

1. The indictment in this case is sufficient. (Paschal's Dig., art. 2410*b;* The State *v.* Thompson, 40 Tex., 515; Wills *v.* The State, 40 Tex., 69.)

2. The charge of the court as to misdemeanor is an error in favor of appellant, and one of which he cannot complain; besides, the charge was not excepted to, and every charge requested by appellant was given without qualification.

3. The declarations of appellant *at the time of arrest,* as to his claim of ownership, were inadmissible. His open and notorious claim must be made at the time of the taking or before his arrest. There is no pretence that he asserted any claim *to this identical cow* to any one before arrest. (Golden *v.* The State, 19 Ark., 590; Tippen *v.* The State, 1 Metc., (Ky.,) 6; State *v.* Wisdom, 8 Porter, 511; 1 Wharton, (7th ed.,) sec. 699, and other authorities cited by me in a former case at Austin, at the last term.

4. The indictment in this case is under art. 2410*b,* Paschal's Dig. This statute is complete within itself, and cannot be construed as dependent on or connected with any other statute. The gravamen consists in " the intent

to defraud." If that exists, the discretion exists with the jury to affix the penalty, not with reference to the value of the animal taken, but to the gravity of the offense and the circumstances attending it. Upon this point see opinion of Justice Reeves in the Wills case, 40 Tex., 75. That the Legislature has seen fit to make all thefts of cattle felony since this indictment was found, serves but to strengthen this particular statute and the views now submitted thereon.

5. There was no evidence that the Tinnin brand was recorded, and attention is called to the fact that at the time of the taking appellant was gathering and selling cattle *for himself*, not another.

DEVINE, ASSOCIATE JUSTICE.—The appellant was convicted of the theft of a cow, and assigns as error the overruling defendant's motion to quash the indictment for the reasons set forth in the bills of exceptions; the refusal of the court to permit defendant to prove that he claimed the cow openly and notoriously at the time of her being taken; that the court erred in the charge to the jury, and in refusing a new trial and in overruling the motion in arrest of judgment.

The defendant was indicted for willfully driving from her accustomed range a cow, and taking the same into his possession with intent to defraud the owner. The taking was alleged to be without the consent of the owner. The indictment was found under article 766 of the Criminal Code, which makes such driving, with a fraudulent intent, theft, without reference to the value of the animal taken and driven. The objection to the term "range," or "accustomed range," as stated in the law and copied in the indictment, is not tenable. It is not necessary to particularize or describe the range further than the statement of its being " the accustomed range " of the animal charged to have been fraudulently driven away from it. Neither

is it necessary to state what distance the animal had been driven; the general averment is sufficient. (The State *v.* Thompson, 40 Tex., 519.)

The charge of the court, so far as the rights of the accused are concerned, is not open to objection. The charge gave the law of the case clearly and fully to the jury; it pointed to facts in evidence which had a tendency to call the attention of the jury to what was evidently the chief reliance of defendant, and the objection raised that in one paragraph of the charge the court informed the jury that if the evidence satisfied them that in driving the animal out of her accustomed range defendant was not, under the circumstances, guilty of theft, they would assess the punishment at a fine not to exceed double the value of the cow, and immediately after informed the jury that if they believed defendant did not take possession of the cow and drive her from her accustomed range with intent to defraud the owner, they should find him not guilty. That the jury were informed that under certain circumstances the offense could be by them reduced from the grade of a felony to a trifling misdemeanor, punished by an insignificant fine, is certainly a charge of which the defendant ought not to complain.

The fourth instruction is urgently presented in exceptions, motion for a new trial, and the brief of appellant. It is as follows : " On the trial of any criminal action, when the facts have been proven which constitute the offense, it devolves upon the accused to establish the facts or circumstances on which he relies to excuse or justify the prohibited act or omission." In this we find no error. The instructions asked by the defendant, covering every possible shade of defense or reasonable doubt of his guilt, were given by the court without alteration.

There is, however, one bill of exceptions, which embraces the assignment of error respecting the refusal of the court to permit the owner of the cow, on his cross-

examination, to answer the question, "if defendant did or did not openly claim the cow at the time witness went after her," and which is well taken. The proof on the part of the State was, that the accused had taken the cow the evening before out of a small lot of cattle and in the presence of a person who informed the owner; that next morning the cow was found in his herd of cattle which he had been gathering up for some time preparatory to his driving to New Orleans and Galveston; that the cow had a brand the same as the brand on five or six head of stock which were in that neighborhood, and which he was authorized by the owner to gather on shares. These facts were testified to by the owner of the stock, who had purchased a stock of cattle at a bankrupt sale, and the five or six head having escaped from the pen after being collected some time previous. It was also shown by a witness, and by other witnesses, who had a stock of cattle with defendant's herded on the prairie, that the accused claimed a cow in the "range" where the animal taken ranged, and that he had spoken of his intention to drive her with the others to market. We think, under the circumstances connected with the taking and holding possession of the cow, together with defendant's authority from the owner to collect the missing stock in the Tinnin or J. T. brand, it being the same brand as the one on the cow charged to have been driven away, that the claim of ownership asserted by the accused should have been admitted in evidence. We cannot say what effect it might have had upon the jury, but it was his right; and where the evidence was conflicting it may have had, if admitted, a decided influence in his favor.

For the error in excluding the declarations of the claim of ownership made when the cow was claimed by the owner, the judgment is reversed and the cause is remanded.

REVERSED AND REMANDED.